Thank you, please be seated. Your Honor, I accept the case of the morning call, 208-1243, People's State of Illinois v. Edgar Sanchez, on behalf of the Baccalaureate, Ms. Susan M. Wilhelm, on behalf of the State, Ms. Anastasia R. Brooks. Good morning, Counsel. Ms. Wilhelm? Wilhelms. Wilhelms. Wilhelms. Thank you. Good morning. May it please the Court, Counsel, I'm Susan Wilhelm with the Office of the State Appellate Defender, and I represent the defendant appellant, Edgar Sanchez. I will be concentrating my argument this morning on the first issue, that Edgar's confession was involuntary when he was denied the presence of his parents, when the juvenile advocate actively assisted in his interrogation, and that the police overbore his will when they refused to accept his denials and offered him false promises of leniency. Since we're looking at the totality of the circumstances here, I'd like to start by reviewing the timeline of the case because it illustrates how the police, from their very first contact with Edgar, asserted that they were in control. They arrested him at 1 a.m. in the middle of the night. Six police officers, including his juvenile advocate, went to his home. They surrounded the house before they even rang the doorbell. Edgar was arrested, placed in handcuffs, and driven in a squad car to the police station. There he was left alone in an interview room until 3 a.m. In the meantime, his parents drove to the police station. They asked to speak with Edgar around 310, but they were told that Edgar was already talking and that they weren't needed. Two minutes later, three detectives began interviewing Edgar. From the very beginning, this process was designed to be coercive. When questioning him, they refused to accept his denials. They confronted him with fabricated evidence, including that his own mother was not supporting his alibi. About 21 pages into his first statement, when Edgar said he wanted his mother brought into the interview room to corroborate his story, they told him his mother had left. His parents did leave the station at 3.45 a.m., after leaving their numbers with the detectives so they could be reached. And although Detective Parrish explained to Edgar that he would be a juvenile advocate for Edgar, he continually worked on Edgar to start cooperating, to help himself, to admit that he was in with him on all the time. You used the word juvenile advocate a couple of times. Yes. The case law is kind of split in Illinois on whether the officer is actually a juvenile advocate or an observer. Some of the cases talk about an option between an observer to make sure that the minor's rights are not violated, and not necessarily advocate for the minor. Is it your position that the juvenile officer in a situation like this must be an advocate for the juvenile? No, I understand that there's two lines of cases, Your Honor, and I believe that under either line of cases what the officer here did fails, because he actively insisted in the interrogation, and Illinois case law does not allow an officer who purports to be the juvenile advocate to assist in the interrogation. But wasn't he just clarifying for the juvenile what the other officers had said previously? Isn't there a difference? And wasn't that what he was doing? I do not believe he was clarifying, Your Honor. Every time Edgar is not given breaks, when he's sitting there and given a chance to collect his thought, this person, who is the only person who is allowed to be with him, he has not allowed the presence of his parents, which raises the presumption that his will was overborne. And this is the person who is supposed to be helping him, and he says things to him like, well, he's just asking for you to be straight up. He's not saying you pulled the trigger, but he's stating you have some involvement in this. He's not saying that you're at the house, but your boys put this on you, and Detective Sherwood's not going to tell you everything, because that's not how this works. He wants to see what your level of cooperation is going to be, whether you're going to be truthful. Now, that's clarification, is it not, those words that you just read? I believe that goes over the line of clarification, Your Honor. And how does it go over the line? Because he's actually trying to elicit additional facts from Edgar. Edgar is continually saying, this is my position, this is my position. Nobody believes your position. Nobody believes your position, and we have facts to contradict your position. It wasn't facts. They didn't have the facts. No, Your Honor. In fact, they did not have the facts, yes. And I think it's particularly egregious when you look at some of the questioning in the second interview, where he actually goes as far as to clarify if that's the word that we're going to use. I think what he was asking before, maybe you didn't understand or maybe you did. When you guys were in that Grand Dam and you said there was a front seat passenger and you and the other guy were lookouts, he was asking you if you saw the gun before the shooting occurred. He's the juvenile advocate. Again, he's the only concerned adult to represent Edgar, to help Edgar through this process, and he's trying to elicit facts of when Edgar first saw a gun. So the fact that maybe he was playing kind of good cop, bad cop? I think he was definitely playing good cop, bad cop because, again, whenever Edgar is left alone with the juvenile advocate, the questioning continues. It just continues in a different way. They continue to work on him. And I think, again, since we're looking at a totality of the circumstances here, Your Honor, we have several things that we need to look at. The parents were present. They asked to be there with Edgar, and they were denied to be in that room with him. So is there a presumption then that that makes the confession of the juvenile involuntary? It's a factor to look at, and it raises a presumption that his will was overborne, Your Honor, because his parents asked to be with him. So you believe it does, and there is case law supporting the fact that it does raise a presumption. Yes, that his will was overborne. I realize the JJC case, and I think Griffin may say the presumption. Are there any other cases that you found outside of those two that have adopted JJC with this presumption? I think Griffin actually doesn't even talk about the presumption. I think he talks about it as a factor that strongly weighs against the finding of voluntariness. My question is, I mean, JJC is out there. I understand it talks about this presumption. Has there been any other case or any other district, or I know it's out of this district, but any other case that's adopted that as a presumption? I believe the Knox case out of the 1st District, Your Honor. I'm sorry? The Knox case out of the 1st District has also adopted that, and that is cited in my brief. Knox. I think what we're looking at here, though, is the intersection of several totality factors that compels this court to find that the tactics here overbore Edgar's will. The police not only frustrated Edgar's parents' attempts to be with him in the interrogation room, they then were able to use the absence of his mother to engage in trickery and deceit. Edgar kept saying he could not have talked to Palone in the middle of the night because he lost his phone, so he could not have received a phone call. But he was told his mother was contradicting the story of losing the phone by saying she talked to him at 20 to 3. Excuse me. But if I can just ask, when you're on the point of his mother, isn't it a fact that she would have been an alibi witness, and didn't that give the police reason enough not to allow her in to see him? I've seen no case law, Your Honor, that says that a trial can be denied the presence of their parents simply because they're an alibi. And I think there are specific reasons, and I believe the Andre M. case that the State brought up gives some reasons why a parent could be excluded. And they're things like if the juvenile insists his parents are excluded, if the parent is disruptive, if the incident involves allegations against the parent, or if time is of the essence. And none of those exist here. And if you're saying that a juvenile whose parents could possibly corroborate where he is can be not allowed in to assist their child through an interrogation, basically what we're saying is that every juvenile, by the nature of his age and his limited economic resources, most of them live at home. If he has an intact family, as Edgar did, and he's living in the family home, as Edgar did, who is going to be his most logical alibi? Who will be able to say where Edgar is? The parents who make sure of his whereabouts. So if any parent who could potentially be asked, was Johnny home the night of the incident, could be excluded from an interrogation room, we would basically be excluding all parents who are actively involved in their children's lives. And we would be leaving all of these children at the mercy of a juvenile advocate who may do nothing to affirmatively protect their rights or, in this case, could even help assist the police in obtaining a confession. So I do not, I understand that the state used that, and also, Your Honor, I do not see anywhere where the alibi argument would extend to Edgar's father. Again, I think it's the intersection of several factors. It's telling him, when he asks, when he asserts this, he continues to assert, I was home, I was home, I could not have gotten the phone call, my mother will support me on this, but your mother's not here. She left you. She contradicted your story and left you here with us. It's not simply that he was denied the presence of his mother. They were able to use the absence of his mother, his mother who wanted to be there with him, to tell him that she had abandoned him and would not support his story. How can that not overbear his will and lead him to despair? The Illinois Supreme Court has found that the concerned adult factors where a juvenile was asked to speak with his parents and where the police have prevented the juvenile's parents from speaking with him. And again, he was prevented from speaking with his parents. You know, you had on this voluntariness issue, you had all these things happen. I mean, everything you've argued. You've had the mother who's not allowed in there. You had the juvenile officer who, according to your argument, is not helping him. This is actually a third interrogator. You've got this lying to him, and all these different things happen. And he still doesn't admit his involvement. He says, and then they put him in a cell. And he's the one that reinitiates the conflict with the police. How does that play into involuntariness? I think it does fit into involuntariness, Your Honor, because although there had been a break, the coercion was still there. Edgar was booked for murder and placed in a holding cell after the first interview. And the final advice from his juvenile advocate, the only concerned adult that he was able to see, was that he needed to remember his involvement in the shooting and tell the truth. It had been made clear to Edgar that he was not going to get out until he admitted something. And when the second interview started, Edgar did start by admitting that Pallone called him at 9 o'clock the night before the shooting, but that he did not go with them. And Sherwood, again, did not accept this statement. And that's when Detective Sherwood really started playing on him with the promises of leniency. You're just 16. You can play your trump card. You can change the direction of what happens to you for the rest of your life. Now, is there a benefit that is conferred? I mean, is there really a promise, per se, with a known benefit? They didn't articulate a benefit that would be recognizable within the criminal justice system. Perhaps not recognizable to us, Your Honor, as adults and as people who are familiar with the system. But, again, we're looking at a 16-year-old child. We're looking at a juvenile case. And he was told, and I quote, You have a key that you can put in the lock and turn the key and twist this investigation around. He had already been arrested. He was already booked into a cell, and he's already been charged with murder. When you're told that you can change the direction of your life, what is the logical conclusion? What is the opposite direction of a jail cell? Did Parrish ever advise him that he could be tried as an adult? No, he was never told that he could be tried as an adult. And although Edgar does have prior adjudications, when you look at those adjudications, he was always allowed to return home. If Edgar has learned anything from his involvement, it is that when you talk to the police, you end up going home. He's always left with that in his mind. And so I think that as a volunteer, as one of the factors in the totality of the circumstances, I think that weighs both ways. He did have prior contacts with the police. But at the end of those, he was always able to go home. And again, I think we need to look at all of these factors together, because once they're able to exclude his parents, they're able to keep Edgar from even conferring with his mother to say, I remember this. I am positive this happened around 3 a.m. What do you remember, Mom? You remember the same thing. Instead, he's being told, no, that's not what she remembers. She is specifically contradicting you. He has no concerned adult there to help him. And again, every time the other officers leave the room, his juvenile advocate continues to work on him. You need to change your story. What do you make of the question of David Acevedo? They would have needed something, Your Honor, other than a straight confession in order to make this case. There is no weapon. None of the co-defendants seem to be willing to testify. The eyewitness identification does not go to my client at all. I have some very strong concerns about David. And since I can't reach it, I can't have no standing. The only thing I can do is raise it as an issue of reasonable doubt. But if you read through David's statement, I'm sorry, if you read through the way the police feed him information, ask him, who are Pailone's friends? Who would Pailone be hanging out with? What kind of a vehicle do they drive? Let's go down a few pages. You have to help Edgar. We need you to help Edgar. You need to help your friend. Now, who would Pailone be with? Who would he be working with on this? What vehicle do you think they'd be driving? They continually feed him the details. And I do think that the most critical detail, when you watch and you read the way that David gave that statement, at the end, it's the flippancy of it that really appalls me, that he says, what time do you leave the house? Oh, 340, 350. He's not sure. He's making up times because he's being pressured to give. He's trying to help them out. He's desperately trying to help his friend Edgar. But if that is true, we all know that Rene Saldana was shot around 3 a.m., and he was taken immediately to the hospital, and he was pronounced dead by 3.30. So even if you look at David's statement, which is basically just reiterating a bunch of facts that are fed to him, he manages to get one very critical fact dead wrong, because Rene Saldana would have been already pronounced dead by the time Edgar left that basement. So I don't give David's statement any credence. They worked on him the same way they worked on Edgar. You can help your friend. You are the only one. We need you to help your friend. You being silent is not helping your friend. You need to help Edgar, and they continue to work on him. And, again, I can only reach that as a reasonable doubt, but I hope that you look at that carefully and that you look at the way he was fed information before he gave a statement. The statement that they took from David Acevedo, the time that they took David's statement, is it consistent or inconsistent with the questioning of the defendant and the information that they claimed that they had? This was a very busy night at the police station, Your Honor. David was picked up around 11.30, 12 o'clock at the bowling alley and brought in. They questioned him until 2.15 or 2.45, and then Edgar's questioning began. So he was there earlier in the night. They were questioning David at the time they went out to the Sanchez home and arrested him. And at the time David was booked for murder, I'm going to say, I'm sorry, at the time Edgar was booked on murder, the only thing they would have had on him at that point would have been David's statement against him. Okay. Thank you. You'll have time on Roboto. Thank you, Your Honor. I would just like to say again that I believe that his confession was involuntary, and I ask that you overturn the trial court's ruling on the motion to suppress. Thank you. Thank you. Ms. Brooks. May it please the court and counsel, my name is Anastasia Brooks, and I represent the people in this case. First of all, I'd like to mention that the defendant comes into this court essentially with two strikes on him in the sense that, first of all, he has forfeited the claims, the two more important claims that he's raising. The involvement of the juvenile, quote, advocate, as well as the trump card promises of leniency arguments that he never raised in his motion to suppress, and therefore it would be incumbent upon the defendant to claim either plain error or ineffective assistance of counsel for failing to preserve those issues below. The other strike is essentially that because the trial court ruled against him and made many factual findings, several of which are adverse to his position on appeal, because the posture of this case, therefore, great deference has to be paid to those factual findings and cannot be reversed unless they're against the manifest weight of the evidence. Several of those factual findings undercut his arguments, such as the arrest occurring at 1 a.m., but yet the evidence also showed that he got up at, like, 1 p.m. that day, so he really wasn't the typical teen that defendant cites in his brief as somebody who should be in bed from 1 to 5 a.m., but yet, like, the activity on the night of the shooting reveals that this is a person who was not physically impaired or tired at the time of the interrogation. This was a kid who dropped out of the eighth grade, correct? I'm not sure if that's what the finding was. There was a mention that he had repeated, before I misspeak, I would like to consult the finding. Completed eighth grade, repeated ninth grade, but left before completion. So that would be his educational history, but yet the trial court also said he was a 16-year-old who didn't appear to have any deficits of mental capacity and appeared to be of above-average intelligence. It didn't display any trouble understanding either the random warnings or any of the questions from the police officers. Well, let's talk about the concerned adult factor that your opponent addressed and some of the cases concerning that. Weren't the parents' attempts to speak to their son frustrated in this case? I'm not sure if the timeline is completely established, but if, in fact, the mother had requested to see the defendant prior to the initiation of questioning, that would establish that what you're talking about is the frustration of that sort of contact, but in the context of what the concerned adult factor is primarily concerned about is the defendant's, the accused's, sorry, the suspect's understanding of his Miranda rights, for example, and the presence of the concerned adult here, which is Detective Parrish, who's activating, acting as a juvenile officer in this case, his involvement going through Miranda, making sure that the defendant asks any questions, and doing it in a manner sensitive to his young age. And, of course, it's also a situation where the defendant has prior criminal justice system contacts, a prior interrogation by police, and so... So you're saying if it's a juvenile and he's had prior contact with the juvenile court system, then the concerned adult factor isn't relevant and the parents' wishes to speak to their son is not relevant? No, I wouldn't say irrelevant. I would say it has less importance in the sense that his understanding of Miranda is not really an issue under these particular facts, given his intelligence, given his prior experience, given the care in which Detective Parrish went through it. And one of the primary important purposes of the concerned adult is to make sure that the suspect understands his rights. But that's not the only factor. It's not the only concern of the concerned adult, but, of course, the concerned adult can also ensure that he's given bathroom breaks and food and that his physical needs are taken care of and that the police are not doing anything abusive to the suspect physically or any sort of coercion like that. So, essentially, he was doing his job appropriately throughout this interrogation. Who? Detective Parrish, the juvenile officer. Yeah, that's the juvenile officer's responsibility, not the parent's responsibility, to see that he's treated well and that he's getting bathroom breaks. I'm talking about the parents. The parents, right. Why is there not a presumption, if we're looking at the Griffin case, that his will was overborne and that the presumption that the fact that you don't allow the parents to come in and that you're trying to intimidate the juvenile? Well, the way the state's brief attacks the notion of presumption, which is supported somewhat by the precedent cited by the defendant, however, it stays critical of that presumption in the sense that, for example, here, what's coercive depends on what the defendant is aware of. For example, if something is going on outside the interrogation room, the defendant has no knowledge that his parents are, for example, requesting to see him and the police are turning them away if that's what happened, and the defendant is unaware of that, how is that coercing the defendant who, the only thing from his perspective, what he understands is, I'm being questioned by police officers and my parents are not here. He doesn't know anything like, unless, for example, the record had established Well, that's an interesting twist. So you're saying then that the only reason that a juvenile should be able to talk to the parents is if the parents, if the juvenile asks to speak to his parents, and isn't there a case law that says specifically that that's not the case? They don't have to ask for the parents. The parents should have an absolute right to confer with their child before questioning? The one case I found that said that, there was one case. JJC. Exactly. But the one case I found that referred to that said that that was a judicial directive. That was prim, page 5 of my brief. So it's not a statutory rule, a mandate, that says that police have to permit this consultation to occur. It's something that was, this is a judicial rule, and it's sort of like a prophylactic type rule that's supposed to help ensure that the police don't overreach. But overreaching here in this context is not what the police did because But in this case, didn't they actually prevent the parents from speaking to the kid? I mean, the parents came down to the police department and they said, we want to speak to our kid, and they said, oh, you know what, I'll get back with you. And they left him sitting there, and then they came back and they said, oh, he's already started questioning, you can't talk to him. So isn't that an actual prevention, if you look at the LaShawn case? Isn't that actually preventing them from speaking to their kid? Well, it depends on what the police's understanding of the facts are at the time, and if there is a mistake in the facts. Essentially, does the question then become, the police had an improper motivation, they're attempting, the question could be, does it matter what the police's motivation is? Are they actually trying to coerce the defendant by frustrating their parents' efforts? Isn't that what the presumption that arises when you have that? If that's what the motivation is, according to the case law, but if the situation here is where the police either made a mistake, they thought he was talking, but yet the interrogation hasn't started yet, because the officer that talks to the mother may not really understand, might get that fact wrong. But if it's just a mere mistake rather than an ill motivation on the part of the police, but the other question is, does this really matter? Does really, the only thing that should matter is what the defendant perceives in that interrogation room. Unless there's some established fact where before the defendant's whisked away, his mother says, I'm coming down to see you, don't tell anything to the police, I'm going to come see you in the interrogation room. So the defendant, if that happened, the defendant would know. My parent's coming and I know I'm going to get to talk to him. But isn't that all the more reason why we have these rules with the juvenile? Because they aren't presumed to know what's going on. The presumption is that it's a juvenile, and they aren't thinking like an adult, like you're presenting that they should be thinking. Isn't that the whole reason why you have the rules with respect to juveniles in confessions? There are special rules because juveniles are different. But here the special rules are to ensure primarily that he understands his rights. That's the primary purpose of the parent to talk. But that's not an issue here, whether or not he understood his rights. I mean, the whole issue is whether or not he was coerced in giving the statement, correct? So Miranda isn't really relevant. Exactly, and that's why I'm trying to say the concerned adult factor here is not that important, because he understands his rights. The concerned adult's role is limited to seeing that there were Miranda rights given? Not limited, but the primary purpose of the concerned adult is to ensure he understands his rights, which is why it could be done performed by a juvenile officer. But the case law is really broader than that. The discussion in the cases really goes much farther than that, doesn't it? It does go farther, but in the sense that the primary purpose is to understand rights. That's not an issue. Therefore, a concerned adult factor here is not really that important. Isn't it also to not create some intimidating atmosphere for the juvenile? Isn't that another factor to be considered? Well, the courts have never required the presence of a parent as a per se requirement before confession can be voluntarily given by a juvenile. It's never been required. So if that was something that was essential for a valid interrogation and confession, then there would be a statute or a rule that says that to the effect, but that's actually not been applied. That's not the rule. Well, how about the Griffin case? Didn't the Griffin case basically say that the police have an affirmative duty to stop questioning the juvenile when the parents come down and say they want to speak? Isn't that basically what the Griffin case said? If that's the rule that was gleaned from that case, the state would disagree with that, because that's a judicial directive. Again, if that is a rule that says that this is what police have to do, that is not a constitutional requirement in order for a voluntary confession to be admitted. That's the issue here. Is this confession coerced? Is it voluntary under the Constitution? And one of the factors to determine coercion is whether or not the parents were given an opportunity to speak to their child or whether the child was given an opportunity to speak to their parents, correct? It has been recognized as a factor, except that the state disputes the relevance of the factor if the defendant is unaware of any fact other than I'm being questioned without my parents. Now, moving to a different factor that we've talked about before, of what effect is the fact that the juvenile re-initiated the conversation after he was put in the cell on the totality of the circumstances? That is the very important factor that weighs in favor of the state and in favor of admission of the confession, because it shows that here the defendant is not being persuaded by any of these alleged promises of leniency, by the refusal of the police to permit his parents to speak. He's maintaining his denials all throughout up to the point in which, even after he re-initiates the questioning, he's still denying and denying and denying, and it's only at the point when the police start talking to him about what would your brother think, imagine him right here in front of you and do the right thing for him, set a good example, at that point he confesses. That's why he confessed. It's not because of any of the other arguments that have been raised by the defendant. So you forget about everything that's happened prior to that, before he's put in the cell, that you believe had no effect on him? It's not irrelevant in the sense that it can't be considered as a factor, as something that might have been in the back of his mind, but in terms of what induced the confession, none of this other stuff is what induced the confession. And what the police said to him about his family or religion is not anything improper. So when the trial court makes these findings of what induced the confession, it wasn't that his will was overborne by the failure of the police to accept his denials or to let his mother come in and corroborate his alibi or to mentions of trump cards or the little conversation that the sort of like, well, this is what's happening, but the juvenile officer explains to the defendant, well, this is why they think you're involved, this is why they won't accept your story and you need to tell the truth. At that point, the defense argument is in a way he's stepping over the line by telling him that. But he's not actually, I'm not sure exactly where the defendant cites this, asking about the gun, for example. If that's after the defendant's already fully incriminated himself, that would be irrelevant to the admissibility of what already happened. Let's talk about the juvenile officer since you've gone there, whether or not the juvenile officer stepped out of his role as a juvenile officer and became a third interrogator. Five times he said to him, you've got to tell them the truth, they have all this stuff against you. Did they have anything against him at that point? I'm not sure what the state of the record is. I know he was arrested, so it must have had probable cause and that part wasn't challenged. And they might have had asservative statements. I'm not sure exactly what the case against him was at that point. And there was some deception involved in terms of the strength of the police's case, but the trump card specifically found that the confession was not induced by deception. And trickery is okay, there's no question. And trickery is acceptable with accepting a confession. But how about when you have a juvenile officer step into the role of an interrogator using trickery? Well, it's different from him sort of like putting the pressure on him, telling him you're guilty, you might better admit it, rather than just sort of saying, Matthew, come over here, then for the juvenile officer to simply say, you need to tell the truth. And that's a lot less coercive than direct accusations of guilt, for example. So for these reasons, if the court has no further— I'm sorry, Your Honor. Did Mendoza ever implicate the defendant? I'm not sure if that was anything that—Mendoza, I believe, had signed his initials to an identification. Did he ever implicate the defendant? Because my understanding of the record is that there was a testimony of the juvenile officer, Parrish, indicated to the defendant, your boy is putting this on you. An indication, at least to me, was that Mendoza is putting this on him, either that he's, A, involved, or, B, he was a shooter. So did Mendoza—was that a true statement? When the juvenile officer told the defendant, your boy is putting this on you, had Mendoza up to that point implicated the defendant, or was that a false statement? I believe what happened was they had shown him the signed identification from the photo array. What else had happened was brought out by the primary—the interrogating detectives had brought that out. And what the juvenile officer then said, that was merely a recap of what the interrogating officers had already said. So that's not an independent remark. That's merely a summarization of what the interrogating officers had already told the defendant. And if that part was deception, that's not anything new that was being introduced by the juvenile officer. That's how I'd like to respond to that. Does a juvenile officer have an affirmative duty to tell a minor that he could be charged as an adult under the case law? I don't know the answer to that, Your Honor. I'm sorry. And for these reasons, the State requests this Court to affirm. Thank you. Thank you. This will have to wait. Your Honor, Justice Burke, I'd just like to follow up on your last comment. There is no indication that Raimundo Mendoza was the one who actually initialed that photo array, I believe. And I did not have time to look it up, but I believe it's in my facts that one of the officers fabricated that. And Eggers specifically testified that that detail was one of the things that shocked him and frightened him because that detail made him believe that other people were talking against him. Had Mendoza been picked up yet? I'm not sure about that, Your Honor. There's very little about him in the record except for the fact that they eventually dropped all charges against him, and he was never charged for this murder. I would like to address the issue of reinitiation again, Your Honor, just because I actually had printed out that page from Eggers' questioning with Detective Sherwood. And yes, Detective Sherwood does make comments to him about put your faith in God and Jesus, but there's three paragraphs right up at the end that are very relevant. And Detective Sherwood specifically says, We're to the point now where the clock is ticking and you need to make a decision on what you're going to do with the rest of your life. Put the truth on the table. You've got nothing to lose. For God's sake, at least save yourself. For your mom, for your family, be a role model to your two little brothers. That is in there. But then he keeps following up. You've got the key right now. Put it in lock, turn the key, and twist this investigation around. Show the people, your family, your little brothers, show them. Show them when you step up and you tell the truth, good things happen. Yes, he reinitiated. And they started out with the same course of tactics and they kept them up, and then they made him false promises of leniency trying to get a statement out of him. And I want to also address the issue of the arrest in the middle of the night because we always look at it from the perspective of the teenager. If you're a teenager, yeah, you're up all night. It probably doesn't affect you. Eggers had been up 17 hours total. But why don't we look at it from another angle? What does it mean to the parents of the juvenile when you go to a home and you arrest their son at 1 o'clock in the middle of the night? Most adults are working people. They have small children at home. If this is in the middle of the night, the parents are definitely asleep. They're confused. They're not at their best. They may have to arrange for someone to help them so they can actually go to the police station. Arrests in the middle of the night don't only affect the minor. They affect the ability of a juvenile's parents to go to the police station and to actively act on their child's behalf. In this case, the parents went to the police station. They were able to go. Yes, but I'm just asking you to look at that factor from both sides because it's a factor that I do think the arrest in the middle of the night is still relevant even though a juvenile could be awake. It impacts his family's ability to be with him. They didn't get down there immediately. No, they were not able to get there immediately, Your Honor, but they were there before questioning began, and they did ask to see Edgar before the questioning began. Can you please respond to the state's argument that your client has forfeited these arguments relating to the juvenile officer and promises of leniency? They are forfeited. I have to address them as plain error, and I would say in this case they are very egregious, and we are looking at the totality of the circumstances, Your Honor. So even if under the plain error test you have to downplay those two factors somewhat, we still have fully preserved the issue of the parents. The parents went to the police station, they asked to see their child, and they were denied the opportunity to meet with Edgar. And there is a presumption raised that Edgar's will is unlawful. I don't think we downplay them. I think that we either consider them or we don't consider them. I don't think we, because they were forfeited, we would consider them any less. And I think in that case, Your Honor, because of the strength of the arguments and the interplay of the arguments here, I do think that you do need to consider them. This was a very coercive environment, and they were able to use these pleas of leniency to continue to work on him. And the juvenile advocacy argument, I believe, works right in with the parents. When you take the parents out of the room, you're leaving Edgar only with the juvenile advocate to act on his behalf. And I think the absence of his parents means that you have to see that that juvenile advocate argument reaches the level of plain error because it is such a crucial factor in this case. Your opponent says that the juvenile advocate is really there to ensure that he understands his Miranda rights. What's your response to that? Edgar said that he understood his Miranda rights. I don't think that's an issue here. The juvenile advocate was also there to ensure that Edgar continued to be off his feet, to be a little bit nervous, and he was there to continue to exhort Edgar to change his story. And that's what he did in this case. And, Your Honor, Justice Burke, you had asked if other cases follow JCCC, and I did double-check, and Knox does follow JCCC. It was a 1989 case, and I just want to end you with a quote from that. We do not believe such conduct by police is consistent with the great care required when a juvenile's incriminating statement is received. At worst, the police purposely precluded the defendant's mother from contact with the defendant by neglecting to see if the mother had arrived until such a time that the defendant had completed his confession. At best, the police simply subjected the defendant to the same routine questioning as a criminal suspect without special regard for his youth. And I think that special regard for youth is something that's still important in this case. And I realized as I was looking through these cases, and I started putting them out in a time order, that there's been a shift away from that special regard for youth. But if we look at Rupert B. Simmons, the case that said that because of adolescent development, they are not eligible for the death penalty. And if you look at some of these recent studies on adolescent brain development, what you see – Is that in the record? Yes, that is in the record, Your Honor, in my first argument. That we are moving back to recognizing children, not just because of their tenured age, but because there are critical differences in their development and in their ability to reason. And it is for that reason that I am again going to ask you to overturn the trial court's ruling and suppress Edgar's confession. Thank you. Thank you. Thank you very much, counsel. The court will take the matter under advisement and render a decision in due course.